UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

September 29, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Linda S. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-1768-CDA

Dear Counsel:

On June 18, 2024, Plaintiff Linda S. ("Plaintiff") petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2025). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11, 13). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

On December 22, 2015, Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits, alleging a disability onset date of November 3, 2015. Tr. 232-42. Plaintiff's claims were denied initially and on reconsideration. Tr. 157-62, 166-67. On December 13, 2017, an Administrative Law Judge ("ALJ") held a hearing. Tr. 39-74. Following the hearing, on March 2, 2018, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 18-38. The Appeals Council ("AC") denied Plaintiff's request for review, Tr. 5-10, so Plaintiff filed a complaint in this Court seeking review of the ALJ's decision, Tr. 1035-43. On June 17, 2020, Judge Boardman remanded the case for further administrative proceedings. Tr. 1044, 1046-49. On September 23, 2020, the AC vacated the ALJ's decision and remanded Plaintiff's case for a new hearing. Tr. 1051-56. On February 2, 2021, an ALJ held a

---

[1] Plaintiff filed this case against Martin O'Malley, the Acting Commissioner of Social Security, on June 18, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Linda S. v. Bisignano*
Civil No. 24-1768-CDA
September 29, 2025
Page 2

new hearing.  Tr. 997-1034.  Following the hearing, on May 20, 2021, the ALJ again determined that Plaintiff was not disabled.  Tr. 965-996.  Because the AC did not assume jurisdiction over Plaintiff's case, the ALJ's decision constitutes the final, reviewable decision of the SSA.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a); 20 C.F.R. § 416.1484(d); 20 C.F.R. § 404.984(d).

## II.     THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since November 3, 2015, the alleged onset date."  Tr. 971.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "obesity, degenerative disc disease, cervicalgia, lumbar spondylosis, bilateral leg varicose veins and venous insufficiency status-post laser ablation, vertigo, asthma, anxiety, bipolar disorder II, and post-traumatic stress [PTSD] disorder." *Id.*  The ALJ also determined that Plaintiff suffered from the non-severe impairments of "iron deficiency, substance addiction disorder, bilateral carpal tunnel [CTS] syndrome, hypothyroid, hypertension, thrombocytosis, Barrett's esophagus, and gastroesophageal reflux [GERD] disease." Tr. 972.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 973.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [Plaintiff] can lift up to 50 pounds occasionally and 25 pounds frequently. [Plaintiff] can stand or walk for 6 hours in an 8-hour workday and she can sit for 6 hours out of an 8-hour workday. [Plaintiff] can never climb ladders, ropes or scaffolds, and occasionally balance. [Plaintiff] can have occasionally exposure to irritants such as fumes, odors, dusts, gases, and poorly ventilated areas. She can perform work where she has no exposure to hazards such as moving machinery and unprotected heights. [Plaintiff] can perform simple, routine, and repetitive tasks in a work environment with few, if any, changes to the work setting and where there is  no rapid assembly line work, where the co-workers are side-by-side and the work of one affects the work of others. [Plaintiff] can perform work where she has only

*Linda S. v. Bisignano*
Civil No. 24-1768-CDA
September 29, 2025
Page 3

occasional interaction with the public and supervisors.

Tr. 977-78. The ALJ determined that Plaintiff "is unable to perform any past relevant work" as a Vice-President Commercial Bank (DOT[3] #186.117-078) but could perform other jobs that existed in significant numbers in the national economy. Tr. 986. Therefore, the ALJ concluded that Plaintiff was not disabled between November 3, 2015 and the decision date. Tr. 987.

## III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

Plaintiff argues that the RFC lacks the support of substantial evidence because the ALJ failed to properly evaluate the medical opinions from Dr. Samer Najar, Dr. Sari Eapen, Dr. Mikhael Taller, Dr. Vikram Sodhi, Mr. Thomas Colligan, and Dr. Willie Yu. ECF 11, at 14-19. Plaintiff further argues that the RFC is not supported by substantial evidence because the ALJ failed to (i) adequately address Plaintiff's nausea and vertigo; (ii) build an accurate and logical bridge between the evidence and RFC; (iii) explain how Plaintiff would remain on task for 20% of the workday; (iv) evaluate the cumulative effect of Plaintiff's impairments; and (v) adequately analyze Plaintiff's subjective complaints. *Id.* at 4-13, 19-27. Defendant counters that the RFC is supported by substantial evidence because the ALJ conducted a thorough review of the record and properly analyzed the medical opinions. ECF 13, at 6-21. None of Plaintiff's arguments prevail.

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

Linda S. v. Bisignano
Civil No. 24-1768-CDA
September 29, 2025
Page 4

> A. *The ALJ properly evaluated all medical opinions.*

The Court concludes that the ALJ properly evaluated the medical opinions of Dr. Najar, Dr. Eapen, Dr. Taller, Dr. Sodhi, Mr. Colligan, and Dr. Yu. As a general matter, "ALJs possess the discretion to determine the level of weight given to each medical opinion provided and received." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) (citing 20 C.F.R. § 404.1527(d)(2)). "Regardless of its source, [the ALJ] will evaluate every medical opinion[.]" 20 C.F.R. § 404.1527(c). For claims filed before March 27, 2017, an ALJ must rely upon 20 C.F.R. § 404.1527—also known as the "treating physician rule"—to evaluate medical opinions.[4] *Shelley C.*, 61 F.4th at 353. Under this rule, an ALJ must "assign greater or 'controlling' weight to the opinion of a claimant's treating physician[.]" *Id.* at 353-54. In other words, an "ALJ is required to give 'controlling weight' to opinions proffered by a claimant's treating physicians so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (internal quotation marks and citations omitted).

However, because "[t]he 'treating physician rule' is not absolute[,]" *Hines v. Barnhart*, 453 F.3d 559, 563 n.2 (4th Cir. 2006), an "ALJ may choose to give less weight to the [opinion] of a treating physician if there is persuasive contrary evidence[,]" *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). "If the ALJ decides not to give the treating physician's medical opinion great or controlling weight . . ., the ALJ turns to the following factors to determine its applicable weight:

> (1) the length of the physician's treatment relationship with the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) whether the medical evidence in the record supports the physician's opinion, (5) the consistency of the physician's opinion with the entirety of the record, and (6) the treating physician's specialization.

*Shelley C.*, 61 F.4th at 354 (citations omitted). Although they "need not mechanically discuss every factor[,]" *Marcia S. v. Kijakazi*, No. 21-679-BPG, 2022 WL 1714853, at *1 (D. Md. Mar. 1, 2022), "an ALJ should give adequate attention to each 20 C.F.R. §§ 404.1527(c) factor," *Shelley C.*, 61 F.4th at 355 (cleaned up).

The ALJ assigned great weight to the opinions of Dr. Eapen and Dr. Yu and Dr. Taller's May 2016 opinion. Tr. 984. He then properly evaluated their opinions. First, the ALJ noted that Dr. Eapen's "opinion [was] related to [his] specialty" and "consistent with the" RFC. *Id.* Second, the ALJ detailed Plaintiff's long treatment history with Dr. Yu, finding his opinion to be "generally consistent with the record as a whole." *Id.* at 984-85. Third, like Dr. Eapen, the ALJ noted that Dr. Taller's May 2016 opinion was "related to his specialty" and "consistent with . . . the record

---

[4] Because the ALJ relied upon 20 C.F.R. § 404.1527 to evaluate the medical opinions, the Court must determine whether the ALJ evaluated such opinions in compliance with the "treating physician rule" and adequately considered the factors under 20 C.F.R. §§ 404.1527(c) and 416.927(c). *See* Tr. 969; *see also* ECFs 11, at 14-15; 13, at 13-14.

as a whole[.]" *Id.* at 984.

The ALJ assigned some weight to Dr. Taller's July 2019 opinion and partial weight to a portion of Dr. Najar's initial opinion. *Id.* at 983, 985. His evaluations of these opinions are proper. First, the ALJ heeded that Dr. Taller's July 2019 opinion was "generally consistent with the record as a whole" but because "Dr. Taller failed to provide a function-by-function of [Plaintiff]'s impairment related limitations . . ., [the] opinion [was] accorded only some weight." *Id.* at 985. The ALJ had also noted that opinions like this one related to Dr. Taller's specialty. *Id.* at 984. Second, the ALJ largely agreed with Dr. Najar's initial severe impairment diagnoses—except for the omission of asthma—but observed that Dr. Najar "did not have the benefit of the longitudinal record when forming this opinion." *Id.* at 983. Like Dr. Taller, the ALJ noted Dr. Najar's "particularized knowledge of the disability program[.]" *Id.*

The ALJ assigned little weight to the opinions of Dr. Sodhi and Mr. Colligan and no weight to a portion of Dr. Najar's initial opinion. Tr. 983-85. The ALJ properly evaluated these opinions. First, the ALJ remarked that Dr. Sodhi failed to "offer any explanation as to how he arrived at [his prescribed] limitations" and that "the record as a whole, as well as Dr. Sodhi's own treatment records," did not support his opinion. *Id.* at 984. The ALJ further noted that Dr. Sodhi's limitations were neither "explained nor supported throughout the record." *Id.* Second, the ALJ found Mr. Colligan's October 2017 opinion "not supported by the treatment notes or by explanation" and "unclear as to how [Mr. Colligan] arrived at the [prescribed] limitations [] in light of the record as a whole." *Id.* The ALJ further found his December 2019 opinion to lack "insight into [Plaintiff]'s functional limitations" and support for "its conclusion that [Plaintiff]'s conditions would make it difficult to work[.]" *Id.* at 985. Third, the ALJ declined to evaluate Dr. Najar's initial opinion "regarding [Plaintiff]'s mental [RFC]" because "it appear[ed] to have been completed by an SDM, who is not an acceptable medical source." *Id.* at 983.

Moreover, unlike in *Jennifer M. v. Kijakazi*, the ALJ here "consider[ed] the doctor's specialization or other factors that tended to support or contradict the doctor's opinion, such as the doctor's understanding of disability programs and their evidentiary requirements and the extent of the doctor's familiarity with the other information in Plaintiff's case record." No. 20-2571-TMD, 2021 WL 4918056, at *5 (D. Md. Oct. 20, 2021) (citation omitted). Importantly, the ALJ gave adequate attention to each §§ 404.1527(c) and 416.927(c) factor. The ALJ noted Dr. Eapen, Dr. Najar, and Dr. Taller's expertise. Tr. 984. The ALJ observed Dr. Yu's familiarity with other information in Plaintiff's case record. *Id.* at 984-85. In contrast, the ALJ acknowledged Dr. Sodhi and Mr. Colligan's lack of familiarity with other information in the record regarding Plaintiff's functional limitations. *Id.* Therefore, the Court rejects Plaintiff's bid to remand on this ground.

  B. *The ALJ adequately addressed Plaintiff's nausea and vertigo.*

The ALJ provided a narrative discussion of Plaintiff's medical evidence spanning eight pages—five of which reference nausea or vertigo—and citing to specific evidence in the record. *See* Tr. 89-118, 607-613, 619-29, 691-94, 951-57, 1207, 1213-1227, 1284-86. For example, the ALJ considered Plaintiff's testimony that she "felt dizzy [four-to-five times a day] every day" and "had to lay down four-to-five hours daily . . . because she felt nauseous." *Id.* at 979. The ALJ

*Linda S. v. Bisignano*
Civil No. 24-1768-CDA
September 29, 2025
Page 6

considered testimony that Plaintiff "treated her nausea and vertigo with medication and over-the-counter medicine." *Id.* The ALJ observed that at a June 2016 examination, Plaintiff "complained of vertigo that was aggravated by rapid movement and musculoskeletal pain" yet "a physical examination showed that her cranial nerves were grossly intact, a visual overview of all four extremities was normal, and [] her lungs were clear with normal auscultation." *Id.* at 980. The ALJ noted Plaintiff's endorsement of nausea and vertigo at seven different examinations between January 2017 and December 2019. *Id.* at 981-82. The ALJ further noted that at each of the seven examinations, Plaintiff presented five out of five extremity strength, normal motor strength, normal neurological findings, intact cranial nerves, normal auscultation, and no edema. *Id.*

In light of this evidence, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her nausea and vertigo symptoms] are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* at 980. Still, the ALJ addressed Plaintiff's vertigo in the RFC:

> [Plaintiff]'s symptoms from . . . *vertigo* . . . support a reduction to can never climbing ladders, ropes or scaffolds; occasionally balancing; occasional exposure to irritants such as fumes, odors, dusts, gases and poorly ventilated areas; no exposure to hazards such as moving machinery and unprotected heights; performing simple, routine, and repetitive tasks in a work environment with few, if any, changes to the work setting and where there is no rapid assembly line work, where the co-workers are side-by-side and the work of one affects the work of others; and performing work where she has only occasional interaction with the public and supervisors.

*Id.* at 985 (emphasis added). The ALJ adequately addressed Plaintiff's nausea and vertigo. The Court will not accept Plaintiff's invitation to "re-weigh conflicting evidence" regarding her nausea and vertigo or "substitute our judgment for that of" the ALJ. *Craig*, 76 F.3d at 589.

### C. The ALJ built an accurate and logical bridge between the evidence and RFC.

A claimant's RFC represents "the most [they] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). As the Fourth Circuit explained, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (alteration in original) (citation omitted). Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). The RFC includes nine conclusions, finding that Plaintiff can:

(1) lift up to 50 pounds occasionally and 25 pounds frequently;

(2) stand or walk for 6 hours in an 8-hour workday;

(3) sit for 6 hours out of an 8-hour workday;

      (4) never climb ladders, ropes or scaffolds;

      (5) occasionally balance;

      (6) have occasional exposure to irritants such as fumes, odors, dusts, gases, and poorly ventilated areas;

      (7) perform work where she has no exposure to hazards such as moving machinery and unprotected heights;

      (8) perform simple, routine, and repetitive tasks in a work environment with few, if any, changes to the work setting and where there is no rapid assembly line work, where the co-workers are side-by-side and the work of one affects the work of others; and

      (9) perform work where she has only occasional interaction with the public and supervisors.

Tr. 977-78. Moreover, the ALJ thoroughly summarized Plaintiff's medical history across eight pages, including relevant medical records, subjective testimony, and medical opinions. Tr. 978-85. Here, each conclusion in the RFC is accompanied by a narrative discussion describing the evidence that supports it. The ALJ incorporated all the limitations from Dr. James, Dr. Eapen, and Dr. Yu's opinions. Tr. 984-85; *see Vanesta H. v. Kijakazi*, No. 23-594-CDA, 2023 WL 8716943, at *4 (D. Md. Dec. 18, 2023) (finding that the ALJ's incorporation in the RFC of limitations from medical opinions created an accurate and logical bridge between the evidence and the RFC). Moreover, the ALJ opined that Plaintiff's symptoms from her severe impairments supported the limitations in the RFC. Tr. 985. The Court finds no concerning errors here.

      *D. The ALJ did not err by failing to explain Plaintiff's ability to stay on task.*

"[A]n ALJ is not required to determine a percentage of time off-task, and can simply consider whether a claimant has the ability to sustain work over an eight-hour workday." *Kane v. Comm'r, Soc. Sec. Admin.*, No. 17-1252-SAG, 2018 WL 2739961, at *2 n.2 (D. Md. May 14, 2018); *see also Adrienne P. v. Kijakazi,* No. 22-358-BPG, 2023 WL 2407394, at *3 (D. Md. Jan. 6, 2023) ("[A]n RFC determination implicitly contains a finding that [a] plaintiff is able to work an eight-hour work day[.]"). Moreover, "an ALJ is free to accept or reject restrictions included in hypothetical questions" posed to a vocational expert. *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000).

"A narrative discussion regarding a claimant's ability to stay on task is required if the ALJ includes a specific off-task limitation in the RFC." *Antwoin W. v. Dudek*, No. 24-0075-CDA, 2025 WL 949410, at *7 (D. Md. Mar. 28, 2025) (citing *April K. v. Kijakazi*, No. 21-1538-BAH, 2022 WL 2793048, at *5 (D. Md. July 15, 2022) (finding unnecessary a narrative discussion of an ability to remain on task where the ALJ did not find an off-task limitation necessary)). As the Court recognized previously, there is deference to an ALJ's decision not to impose off-task limitations

*Linda S. v. Bisignano*
Civil No. 24-1768-CDA
September 29, 2025
Page 8

or otherwise speak to the ability to remain on task. *Id.*; *see, e.g.*, *Audrey L. v. O'Malley*, No. 23-2502-CDA, 2024 WL 3905668, at *4 ("[A]n ALJ does not err by failing to consider a [VE]'s testimony regarding time off-task."); *Kaylee J. v. Kijakazi*, No. 22-2653-BAH, 2023 WL 4027514, at *3 (D. Md. June 15, 2023) (affirming the ALJ's decision not to include an off-task limitation in the RFC despite VE testimony "that being off task for more than nine percent of a workday would preclude work"); *Stacey F. v. Kijakazi*, No. 22-2362-BAH, 2023 WL 3932239, at *3 (D. Md. June 9, 2023) (affirming the ALJ's decision not to include an off-task limitation in the RFC despite VE testimony that a hypothetical employer would not tolerate more than five percent time off task); *April K.*, 2022 WL 2793048, at *5 (affirming the ALJ's decision not to include an off-task limitation in the RFC despite VE testimony that more than ten percent time off task would be work-preclusive).

Here, the ALJ did not err by failing to explain Plaintiff's ability to stay on task. Because the ALJ did not include a specific off-task limitation in the RFC, *see* Tr. 977-78, the ALJ was not required to narratively discuss Plaintiff's ability to stay on task. As in *Antwoin W.*, *Audrey L.*, *Kaylee J.*, *Stacey F.*, and *April K.*, the Court's conclusion is not altered by VE testimony that a 15% or 20% off-task limitation is work-preclusive. Tr. 1033. Moreover, Plaintiff fails to "argue that the presented limitations in the RFC were insufficient to account for her moderate CPP difficulties." *Mona S. v. O'Malley*, No. 23-1392-CDA, 2024 WL 3937194, at *3 (D. Md. Aug. 26, 2024). The ALJ assigned persuasive value to medical opinions that do not include an off-task limitation. *See* Tr. 984-85; *Audrey L.*, 2024 WL 3905668, at *4. One such opinion diagnosed a moderate CPP limitation but explained that the limitation could be accommodated by the limitations included in the RFC. Tr. 984; *see also Sizemore v. Berryhill*, 878 F.3d 72, 80-82 (4th Cir. 2017) (rejecting argument that the ALJ should have included all moderate limitations included in two medical opinions because the opinions, which the ALJ weighed heavily, concluded that the claimant could work on simple tasks and the RFC included the simple task limitation); *Kenneth L. v. Kijakazi*, No. 20-624-SAG, 2021 WL 4198408, at *3 (D. Md. Sept. 15, 2021) (rejecting the claimant's argument that "mirrors the argument" rejected in *Berryhill*). Therefore, the ALJ did not err by failing to explain Plaintiff's ability to stay on task.

E. *The ALJ properly evaluated the cumulative effect of Plaintiff's impairments.*

An ALJ must "consider the combined effect of [a claimant]'s severe and nonsevere impairments in his RFC discussion[.]" *Anthony M. v. Comm'r, Soc. Sec. Admin.*, No. 19-651-SAG, 2020 WL 434581, at *3 (D. Md. Jan. 28, 2020); *see also Britt v. Saul*, 860 Fed. App'x 256, 261 (4th Cir. 2021) ("When a claimant has several impairments, including non-severe impairments, the [ALJ] must consider their cumulative effect in making a disability determination."); *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 866 (4th Cir. 2014) ("[A]n ALJ must adequately explain his or her evaluation of the combined effects of [a claimant's] impairments." (internal quotation marks and citation omitted) (alteration in original)).

Courts in this circuit look at "the [ALJ's] decision as a whole" to determine whether an ALJ adequately explains their evaluation of the combined effects of a claimant's impairments. *Brown v. Astrue*, No. 10-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012); *see also Williams v. Berryhill*, No. 17-16, 2017 WL 4083574, at *10 (M.D.N.C. Sept. 14, 2017) (finding

that "the ALJ's decision, as a whole, adequately demonstrates that he considered [the p]laintiff's impairments in combination"); *Paris v. Colvin*, No. 12-0596, 2014 WL 534057, at *12 (W.D. Va. Feb. 10, 2014) (observing that adequate explanation exists where "it is discernible from the ALJ's decision that" they "considered a claimant's impairments in combination" (internal quotation marks and citation omitted)). An ALJ's explanation cannot be "founded on a fragmentized analysis of those impairments." *Brown*, 2012 WL 3716792, at *6; *see also Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (noting that an ALJ "must consider the combined effect of a claimant's impairments and not fragmentize them") (citations omitted). Even if an ALJ failed to consider the combined effects of a claimant's impairments or provided an otherwise inadequate explanation, the claimant must show that the ALJ's decision "could have been different had he done an adequate combined effect analysis of his multiple impairments." *Brown*, 2012 WL 3716792, at *6; *see also Williams*, 2017 WL 4083574, at *11 (requiring the claimant "to show how a more complete analysis would have resulted in a more restrictive RFC or a different outcome in the case"); *Gregory C. v. Soc. Sec. Admin.*, No. 18-0069-JMC, 2018 WL 6344205, at *4 (D. Md. Oct. 17, 2018) (requiring the claimant to show how an ALJ's failure to consider the combined effects "equates to prejudicial error with respect to his denial of benefits").

While it does not insulate an opinion from any error, a lengthy summary of Plaintiff's medical history—spanning eight pages and including relevant medical records, subjective testimony, and medical opinions—provides substantial basis to conclude that the ALJ properly evaluated the cumulative effect of Plaintiff's impairments. Furthermore, the ALJ identified their consideration of any cumulative effects of Plaintiff's impairments. Tr. 972-74. Importantly, the ALJ considered in combination evidence of Plaintiff's severe and non-severe impairments to conclude that her non-severe impairments resulted in no "more than a minimal limitation in [Plaintiff]'s ability to perform work-related activities when properly treated." *Id.* at 972. This analysis is sufficient.

    *F. The ALJ adequately analyzed Plaintiff's subjective complaints.*

When evaluating a claimant's subjective complaints, ALJs use the two-step analytical framework set forth at 20 C.F.R. § 404.1529 and described in SSR 16-3p. *See Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020)). At the first step of the process, the ALJ determines whether there is "a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms."[5] *Oakes*, 70 F.4th at 215 (quoting *Arakas*, 983 F.3d at 95). If such an impairment exists, the ALJ must "proceed to step two . . . even though the level of pain an individual alleges may seem out of proportion with the objective medical evidence."[6] SSR 16-3p, 2017 WL 5180304,

---

[5] A "symptom" is a claimant's "own description or statement of [their] physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

[6] "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2).

*Linda S. v. Bisignano*
Civil No. 24-1768-CDA
September 29, 2025
Page 10

at *3 (Oct. 25, 2017).

  At the second step, the ALJ assesses "'the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled.'" *Oakes*, 70 F.4th at 215 (quoting *Arakas*, 983 F.3d at 95). Because "disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain," a claimant may "rely exclusively on subjective evidence" at the second step. *Id.* (citing *Arakas*, 983 F.3d at 95). Thus, "an ALJ applies the incorrect legal standard in discrediting complaints 'based on [a] lack of objective evidence corroborating them.'" *Id.* (quoting *Arakas*, 983 F.3d at 96) (brackets in original); *accord* SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.").

  While an ALJ may not dismiss subjective complaints "based *entirely* upon the belief that they were not corroborated by the record's medical evidence," the ALJ must still "ascertain the extent of the claimant's alleged functional limitations and restrictions due to their pain or symptoms that could be reasonably accepted as consistent with the medical signs, laboratory findings, and other evidence, in discovering how these symptoms impact the claimant's ability to work." *Shelley C.*, 61 F.4th at 360 (citing *Craig*, 76 F.3d at 594) (italics in original). In this respect, SSR 16-3p recognizes that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]" 2017 WL 5180304, at *5. Therefore, an ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of [their] symptoms are consistent with the medical signs and laboratory findings of record." *Id.* To do so, an ALJ considers "all of the evidence" in a claimant's record. *Id.* at *2, *7.

  At the first step, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" Tr. 980. In reaching this conclusion, the ALJ acknowledged Plaintiff's endorsement of nausea and vertigo at eight different examinations between July 2016 and December 2019. *Id.* at 980-82. The ALJ also recognized Plaintiff's endorsement of pain and discomfort in her back, neck, shoulders, hands, ankles, and legs. *Id.* at 979-82. The ALJ further observed Plaintiff's endorsement of anxiety, PTSD, panic attacks, and bipolar disorder. *Id.* at 979, 982-83. At the second step, however, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* at 980. The ALJ then noted that at each of her examinations, Plaintiff presented with five out of five extremity strength, normal motor strength, normal neurological findings, intact cranial nerves, normal auscultation, and no edema. *Id.* at 980-82. The ALJ also noted that Plaintiff presented with normal orientation, appropriate mood and affect, normal memory, good eye contact, regular voice, no depression, and no delusions or auditory or visual hallucinations. *Id.* at 982-83. The ALJ listed Plaintiff's daily activities like working in hospitality, shopping at stores, walking and driving, preparing meals, and performing household

*Linda S. v. Bisignano*
Civil No. 24-1768-CDA
September 29, 2025
Page 11

chores. *Id.* at 983.  This represents an adequate analysis of Plaintiff's subjective complaints.  Therefore, the Court declines Plaintiff's invitation to remand on this basis.

*   *   *

The ALJ's reliance on substantial evidence and a robust discussion of Plaintiff's record in assessing the RFC permits meaningful review for the reasons explained above.  A reasonable mind would accept the evidence provided as sufficient to support the ALJ's conclusion.  *See Laws*, 368 F.2d at 642.  That being the case, any disagreement that Plaintiff—or even the Court—might have with the ALJ's conclusions are not enough to reverse the Commissioner's decision.  *Drumgold v. Coom'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025).  Accordingly, remand is unwarranted.

### V.    CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge